## Case No. 9,464.
### MERRICK v. BERNARD.
[1 Wash. C. C. 479.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—KNOWLEDGE—SALE THROUGH SUPER-CARGO—PRIVATE DEBT.

1. If a party knows that A is an agent for several shippers, who had separate interests in the cargo, he cannot take the property of the principal to pay his debt; although he would be perfectly justified in paying over the money, for the use of the principal, to the agent.

2. A consignee, who receives merchandise from the super-cargo for sale, and who knows that the super-cargo is the agent of others, contracts a debt with such shipper for the proceeds of his portion of the cargo; and the super-cargo has no right to appropriate the same to the payment of his private debt.

This action was brought, to recover the amount of sales of certain goods of the plaintiff, which were put into possession of the defendant, a merchant of Bordeaux, by Randell the agent of the plaintiff, and super-cargo of the Ploughboy. It appeared by the evidence of Randell, that the Ploughboy was the property of Jones & Clark, of Philadelphia, who put on board the principal part of the cargo; but the plaintiff, with some other merchants, also shipped separate cargoes for Bordeaux, consigned to Randell, the super-cargo, who received his separate instructions from each shipper. The plaintiff's instructions rather limited the general authority of the super-cargo, but it did not appear that they were communicated to the defendant. On arriving at Bordeaux, Randell placed the business in the hands of the defendant, to whom the whole cargo was delivered; and a freight list, which did not distinguish otherwise than by numbers, the separate interest of the shippers. But the defendant was distinctly informed, that such separate interests did exist, and to what extent. Some time after the sales had begun, but before the whole was completed, Randell drafted a plan for a voyage, for the ship, with a cargo from Bordeaux to Guadaloupe, and thence back to Bordeaux, with a cargo of colonial produce; and having received considerable advances from the defendant, to enable him to place funds in England, for the use of Jones & Clark, he stipulated with the defendant, to return to Bordeaux, to the defendant's address; and to secure the defendant, he gave him a general invoice of the whole cargo, to enable him to insure. He took in a cargo at Guadaloupe, and returned to Bordeaux; but before he got into the town, having heard that the government during his absence had laid such high duties on colonial produce imported otherwise than in French bottoms, as to render the voyage a losing one; he wrote to the defendant to know how this fact was, and suggesting the propriety of his going to Amsterdam, or elsewhere, to sell the cargo, promising to allow the defendant the same commissions, as if he had sold it. The defendant wrote him, that he was misinformed as to the new law; that he would be admitted to an entry, if he was furnished with all proper certificates and documents. He went up, and delivered the cargo to the defendant, with a freight list, from which, or from other papers, the separate interests of the shippers were distin-

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

guished. About this time, the defendant received information of certain bills, drawn on him by Jones & Clark, payable in Amsterdam; and finding that the part of the cargo belonging to Jones & Clark, would, in consequence of the new duties, not form a sufficient fund to enable him to take up those bills, he hesitated about accepting them. To induce him to do so, Randell agreed to place in his hands the whole cargo; observing, that he could draw upon Jones & Clark to reimburse the other shippers. This was agreed to. The whole cargo was so appropriated; the bills were drawn on Jones & Clark, who refused to pay them. The defendant being found in Philadelphia, this action, for money had and received was brought to recover the full amount of the plaintiff's part of the cargo, deducting therefrom the old, and not the new duties; which, it was contended, ought not to be charged to the plaintiff, as it was by the defendant's misinformation to Randell, that he went up to Bordeaux.

Duponceau and Dallas, for defendant, contended; first, that Randell, from his general power as agent, had a right to make this appropriation of the plaintiff's funds, and to reimburse him by bills on Jones & Clark, for the payment of which the defendant was not answerable; that if this was his general power, the defendant was not to be affected by any private limitations of it, from particular instructions; unless such communication was communicated to the defendant. That though a factor cannot pledge the goods of his principal, for a debt of his own, whether with or without notice (6 East, 17), yet he may sell, if bona fide, and without notice (4 Burrows, 2051). That the power of a foreign agent is more extensive than a domestic one. Bull. N. P. 130. That it was not sufficient, that the defendant should have notice of the separate interests of the shippers; but that he should have had notice, that the agent had limited powers. Randell might have received from the defendant, the amount of the plaintiff's interest, and then have lent or given it to defendant, if he pleased; in which case, he alone would be answerable. 2d. As to the extra duties; Randell was bound by a contract, which was certainly within the scope of his authority, to go to Bordeaux, that the defendant might not lose the security for his advances, or the commissions; and that the increase of duties did not discharge him from this obligation; if he did wrong, he alone is liable. Cases cited, Abbot, 78; 3 Bos. & P. 490.

On the plaintiff's side was cited, 6 East, 17; 3 Term. R. 757; 2 Strange, 1178, as to the powers of factors.

Ingersoll & Gibson, for plaintiff.

THE COURT informed the plaintiff's counsel, when about to reply, that they wished him to confine his observations to the facts in the cause; since, upon the law of the case, it was impossible there could be two opinions. If the defendant knew, that Randell acted as agent for the several shippers, and that they had several interests in the cargo; then the defendant, by the sale of the plaintiff's part of the cargo, contracted a debt with him, though he would have been fully justified in paying the money to the agent, unless prohibited to do so by the principal. But this very power in the principal, to forbid that payment, proves that there subsisted a contract also between the defendant and the principal. If this be the case, the question is, has this debt been legally discharged? That it has been paid either to the plaintiff or to Randell, is not pretended; but has the defendant, by any act of Randell, been exonerated from the payment? This brings us to the question, what acts the agent could do, to discharge the defendant within the general scope of his authority; for if that was restrained by any private instructions, it does not appear that such instructions were communicated to the defendant. He had a power to sell the plaintiff's property to the defendant, or to authorize him to sell it, and he might have received payment in money or in bills, and possibly in other ways. But most clearly he had no right to permit the defendant to retain the money, to satisfy the debt due from the agent himself, or from any third person, with notice to defendant of the plaintiff's interest. If the defendant had paid the money to the agent, he, the agent, might, without such notice, have paid the money again to the defendant, to enable him to take up the bills of Jones & Clark; because, in that case, having once received the money, and mixed it with the general mass of his own money, there could be no means to identify it, as belonging to the plaintiff; and in that case, the agent alone would have been responsible. See Salk. 160. But suppose, when the defendant paid the money, in the supposed case, he had received it back, with perfect knowledge that it belonged to the plaintiff; the payment and repayment being merely an operation to enable the agent to convert the plaintiff's money to the use of Jones & Clark, there would have been mala fides in the transaction; and the defendant, receiving the money as the money of the plaintiff, would be answerable to him for it; no matter how the transaction was sanctioned by the agent, the defendant could not say, that he had discharged the debt once due to the plaintiff. The whole question then is, whether this transaction was bona fide or not: and whether so or not, must depend on the question, whether the defendant knew that Randell was the agent of distinct shippers, and that the cargo thus assigned over to him, for the payment of the bills, was the property of different persons. If he did know these facts, the cause is clearly with the plaintiff.

Upon the second point, the facts appearing to be as stated by the defendant's counsel, that Randell was bound, by an agreement with the defendant, to return from Guadaloupe to Bordeaux; the counsel for the plain-

tiff, upon an intimation from the court, of their opinion on that point, gave up the claim of difference between the old and new duties.

Verdict for plaintiff.